PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2909
_____

REGINALD A. ROBERTS,
Appellant

v.

RISA VETRI FERMAN; COUNTY OF
MONTGOMERY; JAMES MATTHEWS;
JOSEPH M. HOEFFEL, III; BRUCE L. CASTOR, JR.;
OSCAR P. VANCE, Jr.; SAMUEL GALLEN;
STEPHEN FORZATO; EDMUND JUSTICE;
CAROLYN T. CARLUCCIO; MARK BERNSTIEL;
TONI LUTER, Sued Individually Held Liable Joint and
Severally
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-09-cv-04895
District Judge: The Honorable
Nitza I. Quiñones Alejandro

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)

April 13, 2016

Before: AMBRO, SMITH, and KRAUSE,
*Circuit Judges*

(Filed: June 17, 2016)

Brian M. Puricelli, Esq.
Law Office of Brian Puricelli
2721 Pickertown Road
Warrington, PA 18976
   *Counsel for Appellant*


Carol A. VanderWoude, Esq.
Marshall Dennehey Warner Coleman & Goggin
18th Floor
2000 Market Street
Suite 2300
Philadelphia, PA 19103
   *Counsel for Appellee*

————————————————

OPINION

————————————————

SMITH, *Circuit Judge.*

2

The key question in this case is not an easy one. We must determine when dismissal for failure to comply with Rule 10 of the Federal Rules of Appellate Procedure is appropriate. In so doing, we also attempt to provide more structure to a narrow area of law that has been subject to confusion within this Circuit. The specific question we are confronted with is whether a district court's decision to dismiss a party's post-trial motion because that party chose not to attempt to recreate the trial record, despite being ordered to do so, was an abuse of discretion. We hold that it was not. We also hold that Appellant's other claims of error lack merit. We will therefore affirm.

## I.

Plaintiff Reginald Roberts, a former employee of Montgomery County, Pennsylvania, brought suit against Montgomery County and a number of its employees[1] alleging that he "suffered continual retaliation, discrimination and humiliation" at work in violation of

---

[1] In addition to the County, Defendants include Risa Vetri Ferman; James Matthews; Joseph M. Hoeffel, III; Bruce L. Castor, Jr.; Oscar P. Vance, Jr.; Samuel Gallen; Stephen Forzato; Edmund Justice; Carolyn T. Carluccio; Mark Bernstiel; and Toni Luter (collectively, "Defendants").

Title VII and his constitutional rights. Pl.'s Am. Compl. 3, ECF No. 4. The complaint, as amended in January 2010, contains five counts, two of which, counts II and III, allege violations of 42 U.S.C. § 1983 for retaliation against Roberts for his allegedly protected speech. Specifically, in count II, Roberts alleges that he was retaliated against by several County employees for seeking heart and lung benefits, filing employment discrimination charges, and testifying at a Fact Finding Conference before the Pennsylvania Human Relations Commission. Count III contains the same allegations but seeks to hold the County liable directly, based on *Monell v. Department of Social Services of City of New York*. 436 U.S. 658, 690 (1978) ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (footnote omitted)). The case was originally assigned to Judge Savage, who granted in part and denied in part Defendants' motion to dismiss on February 23, 2010. On March 31, 2010, the parties then agreed to have the matter referred in its entirety to a magistrate judge.

After briefing and oral argument, the magistrate judge granted in part and denied in part Defendants' motion for summary judgment, further limiting the

4

claims that would proceed to trial. Important for purposes of this appeal, the magistrate judge denied in part and granted in part summary judgment on counts II and III of the amended complaint. However, after alleging bias on the part of the magistrate judge, Roberts, on October 6, 2011, moved to revoke his consent to adjudication by a magistrate. Roberts' petition to revoke consent was granted on January 4, 2012, and his motion for recusal based on alleged judicial bias was thus denied as moot. This case was then reassigned to Judge Savage, who scheduled an initial pre-trial conference and prepared the case for trial.

On February 21, 2012, Judge Savage held a final pre-trial conference at which he expressed concern about whether Roberts would be able to make out a proper *Monell* claim against the County based on the facts as then clearly presented. He also questioned whether the County could legally be held liable under *Monell* in light of a recent Pennsylvania Supreme Court decision regarding the division of authority between the County and the Commonwealth. With that in mind, Judge Savage asked the parties to submit supplemental briefing on the effect of the recent change in Pennsylvania law. As Roberts' attorney noted, "[i]f the law is changed, that would be a reason for reconsideration." Tr. of Final Pretrial Conference at 236, *Roberts v. Ferman*, No. 09-4895 (February 21, 2012).

At the final pre-trial hearing held the morning

5

before *voir dire*, Judge Savage re-raised this issue and entertained the parties' arguments. Ultimately, after considering the supplemental briefing, both sides' oral arguments, and the magistrate judge's opinion, Judge Savage granted summary judgment in favor of Defendants on both counts II and III, reversing the earlier denial by the magistrate judge. The case proceeded to trial on the remaining claims. Six days later, the jury rendered a verdict in favor of Defendants on all counts.

Roberts then filed a timely motion for a new trial or in the alternative for judgment notwithstanding the verdict. In this motion, Roberts made several general allegations of error, focusing primarily on the conduct of the trial judge. For example, Roberts claimed that "[t]he Judge was not clear, consistent and/or fair when making rulings. The Judge's conduct towards the Plaintiff showed contempt for the Plaintiff and disfavor toward Plaintiff's counsel." Pl.'s Post Trial Mot. for New Trial 3, ECF No. 228. In addition, because Roberts again raised allegations of bias—this time by Judge Savage—the case was reassigned to Judge Quiñones. It was then also discovered that four of the six days of the trial transcript had unfortunately been lost.[2]

---

[2] Roberts on appeal notes that he was told by the Clerk's Office that the court reporter had become ill and this caused what was at first believed to be just a delay in

6

Upon learning that the trial record was incomplete, Judge Quiñones granted Roberts' motion for extraordinary relief and ordered the court reporting company to produce the transcript for this case. Even this order, however, ultimately failed to secure the transcripts. Several months later, and after several more unsuccessful attempts to obtain the trial transcripts, Judge Quiñones denied Roberts' second, nearly identical, motion for extraordinary relief that again sought to force the court reporting company to turn over the transcript. In a footnote, Judge Quiñones concluded that granting another such motion would be futile, as the court had made numerous failed attempts to obtain the complete trial transcript.

Judge Quiñones instead ordered the parties to recreate the record in compliance with Federal Rule of Appellate Procedure 10(c) so that she could rule on Roberts' post-trial motion. Roberts, however, chose not to comply with this order, arguing that any attempt to do so would be useless, as the parties would not be able to agree on the contents of a 10(c) statement. Thus, over nine months after ordering the parties to comply with Rule 10(c), Judge Quiñones was still without a record with which she could assess the merits of Roberts' post-trial motion. Concluding, therefore, that Roberts' failure

obtaining the transcripts. Why the transcripts were never ultimately obtained remains unclear.

to comply with Rule 10(c) constituted a failure to prosecute, Judge Quiñones dismissed his motion. Roberts appealed. [3]

## II.

Before addressing the substance of Roberts' arguments, we must address an argument raised by Defendants. They note that Roberts failed to include even the *available* portions of the trial and pre-trial transcripts in the record on appeal. This, Defendants argue, demonstrates a "remarkable lack of diligence" by Roberts and suggests that under *Lehman Brothers*

---

[3] We have jurisdiction here under 28 U.S.C. § 1291, as denial of Roberts' post-judgment motion "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). It is thus immediately appealable. In addition, because interlocutory orders such as partial grants of summary judgment merge with the final judgment, they can be challenged on appeal. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 244 (3d Cir. 2013). Finally, "[w]e review dismissal of a post-trial motion as a sanction for abuse of discretion," *Knoll v. City of Allentown*, 707 F.3d 406, 411 (3d Cir. 2013), and give plenary review to grants of summary judgment, *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010).

*Holdings, Inc. v. Gateway Funding Diversified Mortgage Services, L.P.*, 785 F.3d 96 (3d Cir. 2015), Roberts has forfeited his claims by failing to abide by Federal Rule of Appellate Procedure 10(b). We disagree and take this opportunity to clarify when forfeiture for failure to comply with Rule 10 is appropriate.

In *Lehman Brothers*, appellant Gateway Funding argued that the district court had erred by concluding that it waived an argument in a telephonic oral argument before the court. Gateway Funding then claimed that no record of this proceeding existed, a statement which turned out to be false. We went on to hold that Gateway's argument regarding the allegedly erroneous finding of waiver had been forfeited under Rule 10(b).[4] Because that case has been the subject of much confusion, it merits some discussion here.

We begin by noting that in *Lehman Brothers* we did not cavalierly hold that any failure to comply with Rule 10(b) would result in forfeiture. Instead, we

---

[4] Rule 10(b) states in relevant part that "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." Fed. R. App. P. 10(b)(2).

carefully considered a host of factors, including "whether the defaulting party's action is willful or merely inadvertent, whether a lesser sanction can bring about compliance and the degree of prejudice the opposing party has suffered because of the default." *Id.* at 101. In so doing, we noted first that Gateway specifically argued on appeal that no record existed of the district court's telephonic oral argument. This contention was proven wrong. We thus expressed our concern that Gateway's failure to provide a transcript of the telephonic oral argument, a clear violation of Rule 10(b), "at best shows a remarkable lack of diligence and at worst indicates an intent to deceive this Court." *Id.* We were also unimpressed by Gateway's "weak post hoc justification" for its failure to comply with Rule 10(b). *Id.* We next took pains to emphasize throughout that this sanction was "not favored," "unusual," and "should be sparingly used." *Id.* (internal citations and quotation marks omitted). Finally, we explained that even if we considered Gateway's argument on the merits, we were unlikely to overturn the district court's ruling both because we were reviewing for abuse of discretion and because the transcript did not support Gateway's contentions. *Id.* at 101 n.2.

The takeaway, then, from *Lehman Brothers* should be clear: Gateway made an affirmative and serious misstatement in its brief before this Court when it stated that no record of the telephonic oral argument existed.

10

This, we concluded, evinced either an intent to deceive the Court or a "remarkable lack of diligence." *Id.* at 101. Even so, that alone was insufficient to warrant forfeiture, because we went on to consider Gateway's post hoc explanation for its failure. Only upon finding Gateway's explanation lacking did we conclude that forfeiture was an appropriate sanction.

We are not confronted with such a situation here. There is no allegation that Roberts misrepresented the existence or non-existence of the trial transcript or that the explanation for his omission was a disingenuous post hoc rationalization. Thus, the argument that Roberts showed a "remarkable lack of diligence" here, just as Gateway did in *Lehman Brothers*, is misplaced. Roberts was derelict in preparing the record for appeal—he certainly should have included the parts of the trial and pre-trial transcripts that *were* a part of the record—but this failure is simply not comparable to the serious concerns we raised in *Lehman Brothers*. We therefore conclude that Roberts' failure to comply with Rule 10(b) does not warrant forfeiture of his claims on appeal.

## III.

We next address whether it was an abuse of discretion for the District Court to dismiss Roberts' post-trial motion because it concluded that he failed to prosecute his case. As we have held on multiple occasions, dismissal for failure to prosecute "must be a

11

sanction of last, not first, resort." *Knoll v. City of Allentown*, 707 F.3d 406, 411 (3d Cir. 2013). That being said, we are also well aware that "[t]he power to dismiss for failure to prosecute . . . rests in the discretion of the trial court and is part of its inherent authority to prevent undue delays in the disposition of pending cases and to avoid congestion in its docket." *Hewlett v. Davis*, 844 F.2d 109, 114 (3d Cir. 1988). To that end, where a plaintiff's actions amount to the willful refusal to prosecute or blatant failure to comply with a district court order, dismissal for failure to prosecute is appropriate. *See Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994); *Guyer v. Beard*, 907 F.2d 1424, 1429-30 (3d Cir. 1990).[5]

Turning to the facts of this case, the District Court on September 29, 2014, ordered the parties to recreate a trial record according to Federal Rule of Appellate Procedure 10(c) because the trial transcripts had not and

---

[5] Normally, before a district court may *sua sponte* dismiss a motion for failure to prosecute, it must consider the six factors outlined in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984), but the *Poulis* factors do not apply to post-trial motions. *Knoll*, 707 F.3d at 409-10 ("[A] district court need not engage in a *Poulis* analysis when it dismisses a post-trial motion for noncompliance with procedural rules or court orders.").

could not be recovered.[6]  As laid out in Rule 10(c), "[i]f the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."  Fed. R. App. P. 10(c).  This statement is then to be "served on the appellee, who may serve objections or proposed amendments within 14 days after being served."  *Id.*  Finally, in the event of any disagreement, the statement and objections or amendments "must then be submitted to the district court for settlement and approval."  *Id.*

Nine months after being ordered to comply with Rule 10(c), Roberts had not submitted a proposed statement to Defendants.  Indeed, Roberts' only response when he was ordered to explain his failure to comply with Rule 10(c) was that "it was agreed by counsel for the Parties . . . that neither side would agree [to] the other's recreation of the trial events, so the effort [to comply with Rule 10(c)] would be futile."  Pl.'s Opp'n Resp. to Def.'s Notice to Dismiss 4, ECF No. 264.  Defendants vigorously contest this alleged "agreement."  Roberts then goes on to assert that there is "no such court rule" that allowed the District Court to order the parties

---

[6] Recreating the record was particularly important here because Judge Quiñones had not presided over the trial and thus could not otherwise have meaningfully considered the merits of Roberts' post-trial motion.

13

to attempt to recreate the record, and further suggests that Judge Quiñones was biased[7] against him because "the defendants were also ordered to present a recreated record and they also did not present a recreated record, yet nothing is said of this by the district court." Appellant's Br. 16 n.1.

Roberts' counsel should take the time to read Rule 10(c). He would then discover "such [a] court rule." Indeed, it both provides a specific mechanism by which the parties can have their dispute over the contents of the trial court record resolved, and clearly places the responsibility for initially creating the record on the appellant. As a Federal Rule of *Appellate* Procedure, Rule 10(c) is typically invoked for creating a record for meaningful review on appeal, but district courts have used Rule 10(c) as a guide when, as here, the district court itself needs a reconstructed record in order to rule on the dispute before it. *E.g.*, *Sprint Spectrum L.P. v. Zoning Bd. of Adjustment*, 21 F. Supp. 3d 381, 382 n.1 (D.N.J. 2014), *aff'd*, 606 F. App'x 669 (3d Cir. 2015).

This brings us to the heart of the dispute: whether

---

[7] Given that Roberts ultimately alleged or suggested bias on the part of *three* different and very able Judges in a single case, we are wary about giving any credit to these allegations. That said, there is no need to assess these claims for the reasons discussed *infra*.

14

the District Court abused its discretion in dismissing Roberts' post-trial motion for failure to prosecute, which was a direct result of his failure to comply with the District Court's directive to file a reconstructed record per the process outlined in Rule 10(c). Roberts' blatant refusal to comply with the District Court's September 29, 2014, Order amounts to a willful refusal to move his own post-trial motion forward, which, per *Spain* and *Guyer*, places the District Court's decision to dismiss for failure to prosecute well within its discretion. We will thus affirm the District Court on that basis.[8]

---

[8] We have also consistently affirmed dismissals for failure to prosecute when a plaintiff fails to comply with a Local Rule requiring him to supply the district court with the relevant record. *See, e.g.*, *Knoll*, 707 F.3d at 410-11; *Hewlett*, 844 F.2d at 114-15; *see also* E.D. Pa. Local R. Civ. P. 7.1(e) ("Within fourteen (14) days after filing any post-trial motion, the movant shall either (a) order a transcript of the trial by a writing delivered to the Court Reporter Supervisor, or (b) file a verified motion showing good cause to be excused from this requirement. Unless a transcript is thus ordered, or the movant excused from ordering a transcript, the post-trial motion may be dismissed for lack of prosecution."). Here, two-thirds of the transcripts were missing, making these past cases hinging on the Local Rule not directly on point, but the lesson from those cases remains instructive and

## IV.

Because we conclude the District Court did not err in dismissing Roberts' post-trial motion on account of his failing to even attempt to comply with the District Court's directive to provide a recreated trial transcript, we need not determine whether a new trial is actually warranted. Even if we were to entertain that question, however, Roberts' failure to recreate the record pursuant to Rule 10(c) would *also* foreclose review of the merits of his appeal by our Court.

Courts of appeals have consistently held that when an appellant chooses not to avail him or herself of the procedure available in Rule 10(c) for recreating the trial record, he or she cannot then claim on appeal that the loss of the trial records, without more, necessitates a new trial. This is so primarily because the appellant is responsible for ensuring that the record is sufficiently complete on appeal. Thus, in asking us to grant him a new trial, Roberts must have at least *attempted* to recreate the record in compliance with Rule 10(c)—an

buttresses our conclusion that the District Court's insistence on a Rule 10(c) record was appropriate: when a plaintiff fails to provide the district court with the materials necessary to resolve the case, dismissal for failure to prosecute is an appropriate exercise of the district court's discretion.

16

effort he has failed to undertake in the slightest. *See, e.g., United States v. Sierra*, 981 F.2d 123, 127 (3d Cir. 1992) ("[Appellants] could have sought to reconstruct the record in that respect by conference with trial counsel for submission to the district court. In the absence of that minimal effort . . . we see no reason to direct a remand for the purpose of reconstruction of the unrecorded portions of the record."); *United States v. Kelly*, 535 F.3d 1229, 1243 (10th Cir. 2008) ("Furthermore, even if Mr. Kelly were able to articulate an adequate claim of prejudice from the purported omissions in the record, that claim would be significantly undermined (if not defeated) by Mr. Kelly's failure to avail himself of established procedures—specifically, the procedures of Fed. R. App. P. 10(c)—for reconstructing the gaps in the record."); *Hawley v. City of Cleveland*, 24 F.3d 814, 821 (6th Cir. 1994) ("[P]laintiffs cannot justify their failure to invoke Rule 10(c) merely by asserting that to do so would have led to disputes with opposing counsel."); *United States v. Nolan*, 910 F.2d 1553, 1560 (7th Cir. 1990) ("We recognize that sometimes trial participants' recollections may be too vague, and notes and other trial materials too sketchy, to make Rule 10(c) an adequate device for reconstructing a record. . . . Still, given Rule 10(c), we agree with the Sixth Circuit that it is not appropriate to reverse a district court for failing to [record the court proceedings,] '[a]bsent a showing by counsel on appeal of a reasonable but unsuccessful effort to determine the substance of the off-the-record remarks.'" (internal

17

citation omitted)); *Herndon v. City of Massillon*, 638 F.2d 963, 965 (6th Cir. 1981) ("The clear lesson of these cases is that a party may not seek a new trial simply because matters occurring in the district court are not reflected in the transcript. Rather, that party must at least attempt to cure the defect by reconstructing the record as provided by Fed. R. App. Pro. 10(c)."); *Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30, 31-32 (5th Cir. 1963) ("The appellants have not availed themselves of the provisions of [an analogue to Rule 10(c)], a procedure which might well have enabled them to bring a sufficient record before us. In the absence of compliance with the Rules, the charges urged to be erroneous are not in the record and not before us."). We therefore hold that it was not an abuse of discretion for Judge Quiñones to deny Roberts' post-trial motion. By refusing to even *attempt* to comply with Judge Quiñones order, Roberts essentially prevented any meaningful review of his claims.

This, however, is not to say that when a party's attempted compliance with Rule 10(c) yields an insufficient record, post-trial or appellate review is limited to that insufficient record. As we have noted before, a recreated trial record "can be satisfactory" because "'often, the reconstructed record will enable the appellate court effectively to review the relevant issues.'" *United States v. Sussman*, 709 F.3d 155, 171 (3d Cir. 2013) (quoting *Sierra*, 981 F.2d at 126). But in *Sussman*,

18

we specifically left the door open for an appellant to argue that the recreated record was insufficient to provide meaningful review. We explained that, after recreating the record according to Rule 10(c), in order "[t]o qualify for a new trial, . . . Sussman must make 'a specific showing of prejudice' from the absence of the transcripts." *Id.* at 170 (quoting *Sierra*, 981 F.2d at 125 ("[T]he mere absence of the sidebar transcripts does not signify prejudice.")); *see also United States v. Renton*, 700 F.2d 154, 157 (5th Cir. 1983) ("[A]ppellant must show that failure to record and preserve the specific portion of the trial proceedings visits a hardship upon him and prejudices his appeal."). Without any recreated trial record, however, we cannot even begin to assess whether the requisite prejudice existed here to warrant granting Roberts a new trial.

We are thus satisfied that our holding in this case leaves open avenues for appellants to seek appropriate relief if they can show that they were prejudiced by the loss of part or all of the record below. Such an appellant must comply with the dictates of Rule 10(c) and *then* present specific reasons why his or her attempt to re-create the record was insufficient. This would allow us on appeal (or the district court when considering a post-trial motion) to properly assess whether we could in fact grant meaningful review of the appellant's claims without the actual trial transcript available to us. *See, e.g., Bergerco, U.S.A. v. Shipping Corp. of India, Ltd.*,

19

896 F.2d 1210, 1215 (9th Cir. 1990) (holding that despite compliance with Rule 10(c), because "we cannot meaningfully review the district court's findings [without the benefit of the missing trial transcripts,] . . . [t]his is one of the rare cases where a retrial is appropriate"). Roberts has failed to provide us with the tools to make such an assessment and thus cannot prevail in his quest to overturn the District Court's dismissal of his post-trial motion and obtain a new trial.

## V.

We next turn to the second issue Roberts raises on appeal: whether Judge Savage erred in granting summary judgment in favor of Defendants on counts II and III.[9] Roberts raises two claims of error, neither of which has merit. First, Roberts claims that it was error for Judge Savage to "reconsider" both counts because the

---

[9] Because the District Court's denial of Roberts' post-trial motion was a final decision within the meaning of 28 U.S.C. § 1291, "[u]nder the 'merger rule,' prior interlocutory orders . . . merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." *Camesi*, 729 F.3d at 244-45 (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996)).

magistrate judge had already entertained a summary judgment motion and denied summary judgment on the same counts. This argument fails for multiple reasons, not the least of which is that Roberts sought to revoke his consent to have the case heard by the magistrate judge on October 6, 2011, and his request was granted on January 4, 2012. Thus, allegations that Judge Savage overstepped his authority are baseless.

In addition, the bald claim that once a motion for summary judgment has been ruled on, the District Court loses the "statutory authority" to later grant summary judgment is simply erroneous. Appellant's Br. 27. As we have consistently held, when "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice," the law of the case doctrine does not apply and the court is free to reconsider an earlier denial of summary judgment. *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc*., 123 F.3d 111, 117 (3d Cir. 1997). We also have held that "the law of the case doctrine does not limit the power of trial judges to reconsider their prior decisions," but have noted that when a court does so, it must explain on the record why it is doing so and "take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997); *see also Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Pa.*, 247 F.3d 61, 65 (3d Cir.

2001) ("Under the law of the case doctrine the district court's denial of ADT's initial summary judgment motion did not create any bar to the court's later reconsideration of the renewed motion."); *Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 79-80 (9th Cir. 1979) ("This practice reflects the rule that an order denying a motion for summary judgment is generally interlocutory and subject to reconsideration by the court at any time." (internal citations omitted)).

In this case, we conclude that Judge Savage did not err in reconsidering the magistrate judge's prior denial of summary judgment. Not only were the magistrate judge's prior rulings in this case likely void,[10] but the record also makes it clear that in both instances Judge Savage was presented with changed circumstances that the magistrate judge was unaware of at the time he ruled on Roberts' claims. Regarding both counts, the

---

[10] *See United States v. Muhammad*, 165 F.3d 327, 330 (5th Cir. 1999) (concluding that lack of consent to disposition by a magistrate judge would strip the magistrate judge of jurisdiction over the case); 32 Am. Jur. 2d Federal Courts § 140 ("Once the magistrate judge allows the withdrawal of consent, it is as if the consent had never been given, and, accordingly, the magistrate judge lacks the power to try the case and enter a judgment in it.").

magistrate judge did not have the benefit of the Supreme Court's decision in *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011), since it was decided within days of the denial of summary judgment. This case, Judge Savage concluded, "absolutely . . . control[led]" both of Roberts' First Amendment retaliation claims. Tr. of Trial – Day 1 at 17, *Roberts v. Ferman*, No. 09-4895 (February 29, 2012). Thus, reconsideration was not procedurally erroneous. In addition, an intervening decision from the Pennsylvania Supreme Court cast further doubt on the viability of count III, specifically calling into doubt Roberts' ability to hold the County liable for the actions of certain Defendants since their employment status was now unclear. For this reason, Judge Savage ordered the parties to submit supplemental briefing on the effect of this case. As Roberts' attorney noted, "[i]f the law is changed, that would be a reason for reconsideration." Tr. of Final Pretrial Conference at 236, *Roberts v. Ferman*, No. 09-4895 (February 21, 2012). Accordingly, Judge Savage's reconsideration of summary judgment on both counts was procedurally proper. Roberts' procedural objection that Judge Savage simply could not reconsider the magistrate judge's partial denial of summary judgment is, therefore, without merit.

Finally, we also reject Roberts' claim that Judge Savage could not "*sua sponte*" grant summary judgment since there was no motion filed by Defendants. As we have held, "authority has developed to allow a court to

23

grant summary judgment to a non-moving party" so long as the court gives "notice that [it] is considering a *sua sponte* summary judgment motion" and "provide[s] the party with an opportunity to present relevant evidence in opposition to that motion." *Chambers Dev. Co. v. Passaic Cty. Utils. Auth.*, 62 F.3d 582, 584 n.5 (3d Cir. 1995); *see also DL Res., Inc. v. FirstEnergy Sols. Corp.*, 506 F.3d 209, 223 (3d Cir. 2007) ("District courts may grant summary judgment *sua sponte* in appropriate circumstances."). Here, both of the above requirements were met prior to the grant of summary judgment.

## VI.

For the reasons discussed above, we will affirm Judge Quiñones' order denying Roberts' post-trial motion.