PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 14-1119

LEHMAN BROTHERS HOLDINGS, INC.

v.

GATEWAY FUNDING DIVERSIFIED MORTGAGE
SERVICES, L.P.,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cv-06089)
District Judge:  Honorable Anita B. Brody

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2015

Before:  HARDIMAN, GREENAWAY, Jr. and KRAUSE,
*Circuit Judges*.

(Filed: May 7, 2015)

Paul A. Bucco, Esq.
Matthew I. Sack, Esq.
Davis, Bucco & Ardizzi
10 East 6th Avenue, Suite 100
Conshohocken, PA 19428
        *Attorneys for Defendant–Appellant*

Matthew D. Spohn, Esq.
Norton Rose Fulbright
1200 17th Street, Suite 1000
Denver, CO 80202

Jonathan S. Franklin, Esq.
Norton Rose Fulbright
801 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20004
        *Attorneys for Plaintiff–Appellee*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

This appeal presents us with an opportunity to emphasize the importance of following the rules. At issue is Rule 10 of the Federal Rules of Appellate Procedure, which imposes certain duties on counsel in preparing the record on appeal. Appellant Gateway Funding Diversified Mortgage Services, L.P. violated Rule 10 when it failed to include in the appellate record a transcript necessary to evaluate its principal claim. We hold that claim forfeited. And because we find Gateway's other claims to

lack merit, we will affirm the judgment of the United States District Court for the Eastern District of Pennsylvania in favor of Appellee Lehman Brothers Holdings, Inc.

I

In 2011 Lehman brought suit in the District Court, claiming Gateway was obliged to make good on four mortgage loans that Lehman's subsidiary[1] purchased almost ten years earlier from Arlington Capital Mortgage Corporation. One of the four loans is not at issue on appeal, and the other three were the subject of two contracts dated May 17, 2007 in which Arlington agreed to indemnify Lehman for losses on those loans. The following year, Arlington sold its assets to Gateway. Because Arlington had no assets to satisfy Lehman's claims for indemnification when losses on the loans occurred, Lehman sought recovery from Gateway as Arlington's alleged successor under Pennsylvania's *de facto* merger doctrine.

Both parties moved for summary judgment, and the District Court denied Gateway's motion while partially granting Lehman's. The District Court held that although it was clear Arlington was liable to Lehman on the three loans, it was unclear whether Gateway was liable for Arlington's debts and a trial was necessary to determine whether a *de facto* merger had taken place between Gateway and Arlington.

---

[1] Because the distinction between subsidiary and parent company is immaterial to this appeal, we refer to both as Lehman.

The District Court held a bench trial to decide the dispositive question. After making detailed findings of fact regarding the relationship between Gateway and Arlington and after considering the relevant state law, the Court concluded that a *de facto* merger had occurred. Accordingly, it held Gateway liable to Lehman for indemnification on the three loans—an amount totaling around $450,000 plus interest.

II

The District Court had jurisdiction under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

Our standard of review is mixed. We review the District Court's summary judgment de novo. *Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207, 213 n.6 (3d Cir. 2010). We review its decision regarding whether a defense has been waived for abuse of discretion. *Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012). The abuse of discretion standard also guides our review of the District Court's decisions to deny Gateway's motions for a continuance and to consolidate this case with another. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 (3d Cir. 2012) ("We . . . review a district court's decisions regarding discovery and case management for abuse of discretion."); *see also United States v. Schiff*, 602 F.3d 152, 176 (3d Cir. 2010) ("We give a district court broad discretion in its rulings concerning case management both before and during trial."). Finally, "[o]n appeal from a bench trial, our court reviews a district court's findings of fact for clear error and its

4

conclusions of law *de novo*." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282–83 (3d Cir. 2014).

III

Gateway argues that the District Court erred by: (1) granting partial summary judgment to Lehman on its indemnification agreement with Arlington; (2) refusing to grant Gateway a continuance to retain expert witnesses; (3) refusing to consolidate the case with another; and (4) finding that a *de facto* merger occurred between Gateway and Lehman. We consider each argument in turn.

A

Gateway first contends that the District Court should not have granted summary judgment because a clause in the indemnification agreement may have extinguished Arlington's (and therefore Gateway's) liability. The District Court deemed Gateway to have waived this argument, stating: "In its briefing, Gateway argued that the indemnification obligation was extinguished . . . . However, Gateway abandoned this argument during oral argument held telephonically on April 24, 2013, and so I will not address it here." *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 942 F. Supp. 2d 516, 529 n.12 (E.D. Pa. 2013). Gateway now contends it did not abandon that argument in the District Court.

Instead of ordering a transcript of the April 24 oral argument and including it in the record on appeal, Gateway merely asserted that "there is no record to support the [District] Court's position that Gateway 'abandoned' this argument[.]"

5

Gateway Br. 13. This statement was untrue; in fact, there is a record of that hearing and Lehman filed it with its appellate brief. Gateway responded that it "did not include the transcript of oral argument . . . because it was under the impression that the argument was conducted off the record and that no transcript existed for the oral argument." Gateway Reply Br. 1. And because Lehman filed it, Gateway argued, "the transcript is now a part of the record" and it is irrelevant that Gateway neglected to do so. *Id.* at 2. Gateway's cavalier argument is wrong.

Rule 10 of the Federal Rules of Appellate Procedure governs the record on appeal and requires the appellant to "order . . . a transcript of such parts of the proceedings not already on file as the appellant considers necessary." Fed. R. App. P. 10(b)(1)(A). Moreover, "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." Fed. R. App. P. 10(b)(2). Although Rule 10 does not provide for sanctions for failure to compile the record, Rule 3 states that failure to comply with the appellate rules allows "the court of appeals to act as it considers appropriate, including dismissing the appeal." Fed. R. App. P. 3(a)(2). Because of its failure to comply with Rule 10, we hold that Gateway forfeited its first argument, *viz.*, that its indemnification obligation was extinguished.

We recognize that "[d]ismissal of an appeal for failure to comply with procedural rules is not favored," and that the discretion to dismiss a case afforded by Rule 3 "should be sparingly used." *Horner Equip. Int'l, Inc. v. Seascape Pool Ctr., Inc.*, 884 F.2d 89, 93 (3d Cir. 1989). After considering "such

6

factors as whether the defaulting party's action is willful or merely inadvertent, whether a lesser sanction can bring about compliance and the degree of prejudice the opposing party has suffered because of the default," we conclude that Gateway's failure to provide a transcript of the April 24 hearing presents the unusual situation where forfeiture is appropriate.[2] *Id.* Gateway specifically claimed that "there is no record to support the [District] Court's position that Gateway 'abandoned' this argument, *thus it was extremely prejudiced by such ruling.*" Gateway Br. 13 (emphasis added). That contention was proven wrong. Combining that assertion with Gateway's weak post hoc justification that it "was under the impression that the [April 24] argument was conducted off the record," Gateway Reply Br. 1, Gateway's Rule 10 violation at best shows a remarkable lack of diligence and at worst indicates an intent to deceive this Court.

---

[2] It is unlikely that we would disturb the District Court's ruling that Gateway waived its extinguishment argument even if we did consider the April 24 transcript. That decision would be reviewed for abuse of discretion, a difficult standard for Gateway to satisfy. *Sharp*, 669 F.3d at 158. A review of the transcript indicates that, rather than hastily find the argument abandoned, the Court gave Gateway multiple chances to advance it. For example, after asking several questions about that argument (in response to which Gateway's counsel generally stated that it did not wish to pursue the argument), Judge Brody said, "Okay . . . . [O]ne last chance. There's nothing about [the extinguishment argument] that I should be concerned with, is that right?" Supp. App. 14. Gateway's counsel responded, consistent with previous responses, "Not that I can see, Your Honor." *Id.*

7

In either case, forfeiture is appropriate. *See, e.g.*, *Muniz Ramirez v. P.R. Fire Servs.*, 757 F.2d 1357, 1358 (1st Cir. 1985); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam); *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 237 (5th Cir. 1990); *United States v. Johnson*, 584 F.2d 148, 156 n.18 (6th Cir. 1978); *Woods v. Thieret*, 5 F.3d 244, 245–46 (7th Cir. 1993); *Brattrud v. Town of Exline*, 628 F.2d 1098, 1099 (8th Cir. 1980) (per curiam); *Syncom Capital Corp. v. Wade*, 924 F.2d 167, 169–70 (9th Cir. 1991) (per curiam); *King v. Unocal Corp.*, 58 F.3d 586, 587–88 (10th Cir. 1995); *Abood v. Block*, 752 F.2d 548, 550 (11th Cir. 1985) (per curiam).

B

Gateway's remaining arguments—that the Court erred by (1) denying Gateway a continuance to obtain expert witnesses; (2) denying Gateway's motion to consolidate; and (3) finding that a *de facto* merger had occurred—are unpersuasive. Continuances modifying discovery schedules should be granted "only for good cause." Fed. R. Civ. P. 16(b)(4). We "will not interfere with the discretion of the district court by overturning a discovery order absent a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." *Hewlett v. Davis*, 844 F.2d 109, 113 (3d Cir. 1988). Gateway argues that it showed good cause because its counsel "was unfamiliar with the case" after it decided to change lawyers before trial. Gateway Br. 19. But counsel's unfamiliarity with the case did not make it impossible to obtain evidence— more diligent discovery was certainly possible, albeit by previous counsel. *Cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) (parties cannot "avoid the consequences of the

8

acts or omissions of [their] freely selected agent[s]. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.]"). The District Court did not abuse its discretion by denying a continuance on that ground.

Nor was the District Court's denial of consolidation an abuse of discretion. Gateway sought to consolidate this case—which was filed in 2011—with a case it filed in 2013 seeking contribution and indemnity from Arlington for any liability Gateway had to Lehman. "If actions before the court involve a common question of law or fact, the court *may* . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a) (emphasis added). But in light of the vastly different stages of the cases—Gateway filed its complaint in the contribution action just eight days before it moved to consolidate, while discovery had already closed and Lehman had already submitted its trial brief in this case—the District Court acted well within its discretion in declining to consolidate.

Finally, the District Court neither made clearly erroneous factual findings nor relied on incorrect legal principles when it held after trial that a *de facto* merger occurred between Gateway and Arlington. The Court correctly structured its analysis around the four factors that apply under Pennsylvania law:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.

9

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 989 F. Supp. 2d 411, 431 (E.D. Pa. 2013) (quoting *Fizzano Bros. Concrete Prods., Inc. v. XLN, Inc.*, 42 A.3d 951, 956 (Pa. 2012)). These factors "are not a mechanically-applied checklist, but a map to guide a reviewing court" in deciding whether a *de facto* merger occurred. *Fizzano Bros.*, 42 A.3d at 969.

The District Court painstakingly conducted its *de facto* merger analysis, providing detailed factual findings and legal conclusions pertinent to each factor. Regarding the first factor, continuity of enterprise, it noted that "Arlington's former offices continued to operate as the Arlington Branch of Gateway . . . . [T]he same personnel continued to carry out the same business operations, in the same markets, using the same assets, and at the same physical locations as Arlington had prior to the

transaction." *Lehman Bros.*, 989 F. Supp. 2d at 432. "[T]he transition to Gateway occurred with minimal interruption to Arlington's ongoing business." *Id.* Regarding the second factor, continuity of ownership, the Court found that although the Arlington shareholders had not acquired Gateway stock in the transition, they "retained an ownership interest in [Arlington] after the transaction by virtue of . . . contractual profit sharing entitlements."[3] *Id.* at 436. "Before the transaction, the Arlington owners shared in Arlington's profits as shareholders. After the transaction, they continued to share in the profits of the Arlington Branch of Gateway." *Id.* at 434. Regarding the third factor, the cessation of business by the seller company, the Court stated that "[a]lthough this factor is the most debatable of the factors, I find that it weighs slightly in favor of [*de facto* merger]," because Arlington, as a separate entity, maintained only a "minimal level of activity" after the asset purchase.[4] *Id.* at

---

[3] The Pennsylvania Supreme Court recently concluded that an exchange of shares is not essential to a *de facto* merger, in part because statutory merger does not require an exchange of shares in order to be effected. *Fizzano Bros.*, 42 A.3d at 968. Instead, merely "some sort of continuation of the stockholders' ownership" must be found. *Id.* (internal quotation marks and citation omitted).

[4] This factor differs from the first factor by focusing on whether the seller *as an entity* continues to exist, while the first considers whether the operations, management, and assets—in short, the *enterprise*, albeit not the entity—of the seller continue as a part of the buyer company. Here, the first factor weighed in favor of *de facto* merger because the "personnel, management, physical location, assets, and general business operations" of

437. And regarding the fourth factor, assumption of ordinary business liabilities by the purchaser, the Court noted that "Gateway assumed substantially all of Arlington's debt and liabilities related to its ongoing loan origination business." *Id.* at 438. Thus, "[a]ll four factors of the *de facto* merger analysis individually weigh[ed]" in favor of such a finding. *Id.* at 439.

In sum, we find no error in the District Court's analysis of the *de facto* merger issue. On appeal, Gateway rehashes the arguments it made to the District Court, essentially asking us to weigh the evidence anew and make factual findings. We will not do so because clear error is reserved for findings "completely devoid of minimum evidentiary support displaying some hue of credibility." *VICI Racing*, 763 F.3d at 298 (internal quotation marks omitted). The District Court's decision was guided by the correct legal principles and supported by significant evidence. Accordingly, we will affirm its judgment.

---

Arlington continued to exist—as part of Gateway. *Lehman Bros.*, 989 F. Supp. 2d at 432. The third factor, by contrast, weighed only slightly in favor of *de facto* merger because Arlington did not formally dissolve as a company, though it did "essentially devolve[] into an assetless shell." *Id.* at 437.