**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1329
_____

ELISHA L. GRESHAM,
                              Appellant

v.

DELAWARE DEPARTMENT OF HEALTH & SOCIAL SERVICES
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 16-1315)
District Judge:  Honorable Maryellen Noreika
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 10, 2020

Before:  SHWARTZ, RESTREPO and GREENBERG, Circuit Judges

(Opinion filed: July 15, 2020)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Appellant Elisha L. Gresham appeals from a District Court order entering summary judgment in favor of her former employer Appellee Delaware Department of Health and Social Services ("DHSS") and denying her motion for reconsideration of an order granting, in part, DHSS's motion to dismiss her amended complaint. We will affirm.

I.

We write primarily for the parties; therefore, we provide background only as necessary to resolve this appeal.

In 2010, DHSS hired Gresham and promoted her three years later. Gresham, who is black, contends that after she was promoted her immediate supervisors initiated a pattern of bullying and discriminatory behavior toward her, which included hurling personal attacks, racial taunts, insults, and vulgarities at her. This pattern of behavior began in November 2013 when her supervisor, Kieran Mohammed—at various times identified by Gresham as a Middle Eastern or Asian man born in Trinidad—approached Gresham and said that he would have "preferred a White woman, a White man or a Middle Eastern Woman [got] the position" into which Gresham was promoted. Supp. App. 20, ECF No. 12. He explained that he preferred this because he anticipated fallout for "having too many Black people" in the unit. Supp. App. 20. Gresham concedes that before this incident she had "never had any prior worries/concerns of race issues or

2

relations." Supp. App. 20. She alleged no other incidents of explicit race or gender discrimination. See generally, Supp. App. 18–37; Appellant's Br.

Later, in early 2015, another supervisor in her work group, Wendy Brown—a black woman, and someone who Gresham considered "almost like the best of friends"—told Gresham that she had "Fucked up" a project, called her "clueless," and a "dumbass." Supp. App. 198, ECF No. 12. Brown's outburst was, Gresham alleged, the most recent example of Brown's bullying behavior, which prompted Gresham to complain to a departmental director. Supp. App. 6. After an investigation, Brown admitted to the outburst and DHSS disciplined her. Gresham complained that she was subject to other harassment including, among other things, "several ambush[] meetings," having to take stretch and walk breaks "in her office"—which she was told by the "Department of Labor" "is a form of 'slavery'"—and the denial of her request for a "moveable keyboard tray." Supp. App. 21, 54.

In mid-2015, Gresham received an annual performance rating of "meets expectations," as did each of her colleagues in her working group. Gresham, however, sought to contest the rating. Brown purportedly told Gresham that she could submit a formal rebuttal, but threatened Gresham by telling her that pursuing a formal rebuttal would bar her from future employment with the state government. Nevertheless, Gresham submitted her rebuttal. Shortly after doing so, Gresham requested, and was approved for, medical leave due to a flare up of preexisting sciatica and stress. While on

3

leave, Gresham then applied for, and received, short-term disability benefits. She later

also sought to convert her short-term disability leave to long-term disability leave.

In January 2016, human resources administrator Mary Parker—a black woman—

discovered that Gresham's short-term disability benefits had lapsed as of November 18,

2015. Since Gresham had not returned to work since her leave of absence, Parker

concluded that Gresham's employment at DHSS had terminated, by operation of law,[1] on

November 18, 2015. In February 2016, Parker issued a notice of termination letter to

Gresham who, unbeknownst to Parker,[2] had, weeks earlier, filed a complaint with the

Equal Employment Opportunity Commission.

After the EEOC terminated its involvement with Gresham's case, and upon

obtaining a right-to-sue letter from the U.S. Department of Justice, Gresham sued DHSS

under Title I and Title V of the Americans with Disabilities Act, § 504 of the

Rehabilitation Act, and Title VII of the Civil Rights Act of 1964. On DHSS's motion to

dismiss, the District Court dismissed Gresham's initial complaint with leave to amend.

Gresham filed an amended complaint, and on December 18, 2018, upon DHSS's motion

---

[1] Under 29 Del. C. § 5253(c)(5), "[u]pon the exhaustion of the maximum short-term disability benefit period, any employee, except those entitled to hazardous duty pay as defined in § 5933(c) of this title, shall no longer be an employee of the State or any of its political subdivisions provided the employee has exhausted their Family Medical Leave Act of 1993 (FMLA) [29 U.S.C. § 2601 et seq.] entitlement and/or is not FMLA eligible."

[2] Gresham produced no evidence that Parker was aware of the EEOC complaint at the time she issued the letter. Indeed, Gresham admitted in her deposition that Parker had "showed good rapport" with Gresham's husband—also an employee at DHSS—and that Gresham had "no evidence . . . that [] Parker is prejudiced towards women or black people . . . . she's never personally said nothing to [her]" to suggest that Parker was biased. Supp. App. 202–03.

4

to dismiss the amended complaint, the District Court dismissed Gresham's ADA and § 504 claims, but allowed her to proceed on her Title VII claims.  After the Parties completed discovery, and over 120 days after the District Court issued its order dismissing all but Gresham's Title VII claims, she filed a Motion for Reconsideration of that ruling.  On January 15, 2020, the District Court denied the Motion for Reconsideration and further granted summary judgment to DHSS on Gresham's remaining claims.  This timely appeal followed.

II.

The District Court had jurisdiction under 42 U.S.C. § 2000e-5(f)(3).  We have appellate jurisdiction under 28 U.S.C. § 1291.

We review the grant of DHSS's motion for summary judgment de novo.  Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P., 785 F.3d 96, 100 (3d Cir. 2015).  Summary judgment is appropriate where, viewing the evidence in the light most favorable to the respondent, "no genuine dispute exists as to any material fact, and the moving party is entitled to judgment as a matter of law."  Montone v. Jersey City, 709 F.3d 181, 189 (3d Cir. 2013).  As for review of the denial of a motion for reconsideration, we apply the abuse of discretion standard.  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).  However, to the extent that a motion for reconsideration is valid, and it meets the legal threshold to "bring[] up the underlying judgment for review," Quality Prefabrication v. Daniel J. Keating Co., 675

5

F.2d 77, 78 (3d Cir. 1982), we exercise plenary review. See Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013). We review the grant of a defendant's motion to dismiss de novo. Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" Fleisher v. Standard Ins., 679 F.3d 116, 120 (3d Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.

Gresham complains that the District Court's "judgment was bias[ed]," "demonstrated abuse of authority and abuse of the Summary Judgment federally governed Rule 56," and "demonstrated an act of Court/Judicial Bullying toward[] a Pro-Se' litigant." We disagree and find, instead, that the District Court appropriately analyzed each of Gresham's claims and concluded correctly that Gresham cannot establish any of her claims as a matter of law.

We begin with the District Court's order granting in part DHSS's motion to dismiss.

The District Court ruled that Gresham's ADA claims against DHSS—a Delaware state agency—are barred by the Eleventh Amendment, which immunizes a state against such claims unless the state has expressly waived its protection. See, e.g., Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996) (concluding that the Eleventh

6

Amendment barred former employees of a state agency from suing for discrimination under similar federal statute). We agree.

The District Court also ruled, upon consideration of Gresham's factual allegations contained in her amended complaint as well as her response in opposition to DHSS's motion to dismiss, that she could not state a prima facie claim under § 504.[3] Indeed, in denying Gresham's Motion for Reconsideration, the District Court further noted that she could not establish a prima facie case even after she had engaged in formal discovery. We agree.

The District Court rightly found that Gresham could not, assuming her allegations to be true and drawing all inferences in her favor, establish that she was capable of performing the essential functions of her job at the time of her termination because she was suffering from serious, disabling medical issues. As she alleged, and as the evidence showed, her medical condition was such that she sought conversion of her initial medical leave of absence into short-term disability leave and then conversion from short-term disability leave to long-term disability leave. Given these allegations and the evidence adduced in discovery, we agree with the District Court's conclusion that Gresham cannot establish a prima facie case under the Rehabilitation Act.

---

[3] To state a claim under § 504, a plaintiff must show (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, (3) that he or she was nonetheless terminated or otherwise prevented from performing the job. The plaintiff must make . . . a showing that reasonable accommodation is possible." Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).

We further conclude that the District Court did not abuse its discretion in denying Gresham's Motion for Reconsideration.

IV.

Next, we turn to the District Court's grant of summary judgment to DHSS on Gresham's hostile work environment and retaliation claims under Title VII. On these claims, too, we agree with the District Court.

First, the District Court assessed Gresham's claims that DHSS had discriminated against her based on her race and gender by creating a hostile work environment. The District Court found only one incident relevant to Gresham's race- and gender-based claim—the incident in which her supervisor, Mr. Mohammed, openly expressed his preference that a white woman, white male, or Middle Eastern woman had been hired for the position to which Gresham was promoted. The court reasoned that this incident was insufficiently pervasive or severe to provide Gresham with grounds to pursue a claim against DHSS.[4] We likewise conclude that this incident cannot, as a matter of law, substantiate a claim under a hostile work environment theory because it does not support an inference of pervasive hostility, nor is it, standing alone, severe enough to establish a hostile work environment. We also note that the insults that Gresham suffered from her

---

[4] It is well-established "that Title VII is not violated by the 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' or by mere 'discourtesy or rudeness,' unless so severe or pervasive as to constitute an objective change in the conditions of employment." Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 280 (3d Cir. 2001) (quoting Faragher v. Boca Raton, 524 U.S. 775, 787 (1998)).

other supervisor, Ms. Brown—including being called a "dumbass" and "clueless"—did not implicate Defendant's race or gender and, therefore, were properly disregarded by the District Court as irrelevant to Gresham's race- and gender-based discrimination claims.[5]

We also agree with the District Court's assessment of Gresham's retaliation claim. In granting summary judgment for DHSS, the District Court found that Gresham's claim failed for two main reasons: (1) Gresham failed to establish a causal connection between her participation in a protected activity and an adverse employment action;[6] and (2) even if Gresham were able to establish causation under the McDonnell Douglas[7] burden shifting framework, when faced with DHSS's legitimate non-discriminatory reason for terminating Gresham, Gresham, nevertheless, failed to produce enough evidence to show that DHSS's reason was pretextual.

First, the District Court found that while Gresham may have presented triable issues on the first two elements of a retaliation claim under Title VII, she failed to present enough evidence to raise a genuine issue of material fact as to the third element of her claim—causation. We agree. We assume, without concluding, that Gresham engaged in

---

[5] To be relevant to Gresham's hostile work environment claim, her mistreatment must be "because of [her] race or sex." Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001).

[6] To prevail on a claim of retaliation under Title VII, a plaintiff must prove: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006).

[7] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

protected activity when she complained to her departmental director about harassment in the office and when she filed her EEOC complaint. Gresham, however, has offered insufficient evidence to show that she suffered adverse employment action <u>because</u> she engaged in these protected activities. Gresham failed to provide evidence that her supervisor, Ms. Brown—who allegedly threatened to bar her from future state employment—personally interfered with any of her attempts to secure new employment, and that Ms. Parker—who sent the notice of Gresham's termination—knew that Gresham had filed an EEOC complaint at the time Parker sent the notice. Without such evidence, Gresham's claim fails as a matter of law.

Even if Gresham had provided enough evidence to establish a prima facie case of retaliation, she otherwise provided insufficient evidence to rebut DHSS's proffered legitimate non-discriminatory reason for terminating her and, therefore, Gresham's claim fails under the <u>McDonnell Douglas</u> burden shifting framework. At best, Gresham's allegations suggest that DHSS's decision to terminate her employment because her short-term disability benefits had lapsed was a mistake, not pretext. Mistakes, alone, are insufficient to rebut a proffered legitimate non-discriminatory reason.[8]

---

[8] "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken." <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 331 (3d Cir. 1995) (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994)).

IV.

Accordingly, we will affirm the judgment of the District Court. Appellant's

Motion to Supplement the Record is denied.[9]

---

[9] On appeal, Gresham filed a Motion to Supplement the Record with new testimony from an unidentified witness who "has already been a major person in this case for 5 years." She offers no explanation of what testimony she seeks to elicit from the unidentified witness, why such testimony is relevant to these proceedings, nor why, despite the witness's having been a "major person . . . for 5 years," such testimony was not presented to the court below. In short, she fails to show the existence of any exceptional circumstances to permit her to supplement the record at this late stage. See Burton v. Teleflex Inc., 707 F.3d 417, 435 (3d Cir. 2013) (providing that a party may supplement the record on appeal in only "exceptional circumstances").