**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3964
_____

DONALD C. HENNESSEY, JR.,

Appellant

v.

DOLLAR BANK, FSB
_____

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No.:  2-18-cv-00977)
Magistrate Judge: Honorable Patricia L. Dodge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 25, 2020

(Filed: November 19, 2020)

Before:  McKEE, JORDAN and RENDELL, *Circuit Judges*.

_____

O P I N I O N[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Dollar Bank, FSB terminated Donald Hennessey after it learned that he violated company policy by offending some of his coworkers by hanging a plain, brown, stuffed monkey above a shared workspace during the Martin Luther King, Jr. Day holiday weekend and leaving it there, without explanation, until it was found by his coworkers upon their return from the holiday weekend. Later, Hennessey, who is white, sued Dollar Bank for wrongful termination and racial discrimination. The District Court granted summary judgment to Dollar Bank, and Hennessey appealed. We will affirm.

I.

On January 9, 2018, while out shopping on his day off from Dollar Bank's IT department, Hennessey decided to buy an unadorned, plain, stuffed, brown monkey that he found in a Valentine's Day display. Four days later, on the Saturday before the Martin Luther King, Jr. Day holiday, over a month before Valentine's Day, while none of his black coworkers were in the office,[1] he, without explanation, retrieved a ladder, positioned the ladder under a metal rack suspended from the ceiling in a shared workspace, climbed the ladder, and then hung the monkey from the rack by its arms. He worked the rest of Saturday and then Sunday alone before he left for a three-day break from the office.

The day after MLK Day, while Hennessey was out of the office, two of Hennessey's coworkers, who are both black, returned to work and found the monkey

---

[1] That day, only one other coworker, a white man, was in the office.

inexplicably hanging in their shared workspace. Both coworkers, one of whom was brought to tears, complained to human resources that they were offended by the display in view of the MLK Day holiday.

The vice president of HR, Stephanie Herring-Myers, immediately launched an investigation to find out, among other things, who had done this, and to address a general firestorm of office rumors and gossip generated by the display. After determining that it was Hennessey who had hung the monkey and after completing the investigation, Herring-Myers concluded that his actions violated the Employee Guide and its prohibitions on harassment.[2] Then, she called him to a meeting at which she formally terminated his employment for violating company policy against harassment.

At the meeting, Herring-Myers, Hennessey, and another Dollar Bank employee discussed the incident. Herring-Myers told Hennessey that his actions had offended some of his coworkers who perceived his acts as offensive. He offered no apology, but instead offered that he hung the monkey as a Valentine's Day decoration in the same way that Christmas decorations are hung in the office before Christmas. By the end of the

---

[2] The Employee Guide provides:

> Dollar Bank is committed to providing a work environment free of discrimination and unlawful harassment. All employees should be free from all forms of illegal harassment, including offensive language and behavior . . . . <u>Employees should consider their behavior and comments from the perspective of anyone who might be offended by them</u>.

App. 120 (emphasis added). Harassment is further defined, under the Employee Guide, to include all "[v]isual forms of harassment, such as offensive posters, cartoons, or drawings." App. 120.

meeting, Herring-Myers told Hennessey that his employment with Dollar Bank was terminated.

Later, Hennessey applied for unemployment compensation benefits and noted on his application that he left his job due to "discrimination" and further explained that he did not violate company policy because there was no policy against hanging up monkeys over the MLK Day weekend. Dollar Bank maintained that he was terminated for misconduct.

In the unemployment proceedings, Dollar Bank incorrectly represented to the unemployment compensation authorities that Hennessey was observed hanging the monkey up by a rope around its neck when, in fact, Hennessey hung the monkey by its arms. At a hearing before an unemployment compensation referee, under oath, Dollar Bank corrected its misrepresentation. Ultimately, the unemployment compensation referee denied Hennessey's application for benefits finding that his testimony and argument was "disingenuous and preposterous," and that he violated Dollar Bank's policy against harassing and offensive conduct. App. 439. Hennessey appealed, but his appeal was denied.

Later, Hennessey filed suit in the District Court for race and age discrimination.[3] Eventually, Dollar Bank filed a motion for summary judgment on his race discrimination claim and the District Court granted the motion. This timely appeal followed.

_____

[3] Hennessey voluntarily dismissed his claim for age discrimination.

4

## II.

The District Court had jurisdiction under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

We review the grant of Dollar Bank's summary judgment motion de novo. Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P., 785 F.3d 96, 100 (3d Cir. 2015). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the respondent, "no genuine dispute exists as to any material fact, and the moving party is entitled to judgment as a matter of law." Montone v. Jersey City, 709 F.3d 181, 189 (3d Cir. 2013).

## III.

Hennessey complains that the District Court erred in granting summary judgment to Dollar Bank because there remain genuine issues of material fact as to whether Dollar Bank's legitimate, nondiscriminatory reason for terminating him was pretextual. In support of his argument, Hennessey relies on three inconsistencies or contradictions that he contends supply a basis from which a factfinder may find pretext: (1) Dollar Bank's original misrepresentation to the unemployment compensation authorities about the way in which he hung the monkey; (2) Herring-Myers' decision to terminate him before determining his subjective intent at his termination meeting; and (3) Dollar Bank's inconsistent explanation in litigation about whether his job was eliminated or filled by Jerome Gibson, a black man. As explained below, none of these inconsistencies are availing. Instead, we conclude that the District Court did not err in concluding that

5

Hennessey could not carry his burden of showing pretext because none of the inconsistencies in Dollar Bank's conduct contradict the core facts of his termination.

A.

It is unlawful to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Without direct evidence of discrimination, a plaintiff may prove that he was subject to unlawful discrimination under the well-established burden shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under the McDonnell Douglas framework, the plaintiff must, at the outset, establish a prima facie case of discrimination.[4] If the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking some adverse employment action against the plaintiff. McDonnell Douglas, 411 U.S. at 802. For the employer, this is a "relatively light" burden, which it can meet by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St.

---

[4] To establish a prima facie case, the plaintiff must show that: "(1) [he/she] belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) [the adverse employment action was made] under circumstances that raise an inference of discriminatory action[.]" Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas Corp., 411 U.S. at 802).

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993)).  Finally, if the employer meets its relatively light burden, then the burden shifts back to the plaintiff who must show "by a preponderance of the evidence that the employer's explanation is pretextual."  Id.

At the third step of the McDonnell Douglas analysis, the plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id. (citing Hicks, 509 U.S. at 510–11).  To permit a fact finder to draw such conclusions, the plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision."  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005)).

"[I]t is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus."  Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 283 (3d Cir. 2001) (emphasis added).  It is of no consequence to this analysis whether an employer's decision to take adverse action against an employee is "wise, shrewd, prudent, [] competent[,]" or grounded in a mistaken or patently wrong belief about an employee, the employee's intent, or the employee's conduct.  Fuentes, 32 F.3d at 765.

That we do not focus on ancillary or incidental facts, but instead, on core facts, is sensible since the law applicable to this case prohibits employers from discriminating only "because of [an] individual's race," and not for any other reason.  42 U.S.C. § 2000e-2(a)(1).  Indeed, as the District Court noted in granting summary judgment to

7

Dollar Bank, the courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practice, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [law] does not interfere." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995) (quoting McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 373 (7th Cir. 1992)).

B.

In this case, we will assume without deciding, as did the District Court, that Hennessey established a prima facie case of discrimination and, therefore, we focus only on whether Hennessey adduced enough evidence to justify submission of his case to a factfinder on the issue of pretext.

On this issue, we agree with the District Court's conclusion that while Hennessey may have adduced evidence of some inconsistencies in Dollar Bank's conduct, he has not adduced evidence of inconsistencies that contradict the core facts undergirding Dollar Bank's reason for terminating him. The District Court stated, and we agree, that "[t]he inconsistencies and contradictions on which Plaintiff relies to support his case fail to establish pretext because they do not refute Dollar's proffered legitimate reason for his termination: the suspending of a brown monkey from the ceiling in a shared workspace over the Martin Luther King, Jr. holiday weekend." App. 22. Indeed, these facts are undisputed and none of the three inconsistencies on which Hennessey relies to argue pretext place any of these core facts in dispute.

First, while Hennessey notes that Dollar Bank incorrectly described the way he hung the monkey to the unemployment compensation authorities, this inconsistency does nothing to contradict the core facts on which his termination was based. Setting aside that Dollar Bank corrected its misrepresentation in a sworn hearing, and setting aside Dollar Bank's purportedly benign explanation for how this misrepresentation made its way into the unemployment proceedings in the first instance,[5] the misrepresentation simply does not, as a matter of law, contradict the core facts that catalyzed Hennessey's termination. Whether he hung the monkey by its arms or by a rope is, ultimately, of no import because Dollar Bank's decision to terminate Hennessey stemmed not from how the monkey was hung, but rather, from its conclusion that his conduct—of hanging up a monkey in the first place, without explanation, during the MLK Day holiday weekend—offended his coworkers in violation of company policy.

Second, Hennessey contends that the timing of Herring-Myers' decision to terminate him supports the inference that Dollar Bank necessarily considered his race in terminating him. In short, Hennessey supposes that the only explanation for why Herring-Myers terminated him before she gave him an opportunity to explain himself is because she assumed that his act—of hanging a monkey in a shared space over the MLK Day holiday weekend—was "per se" offensive because he is white. He further speculates that had he been black, he would not have suffered any adverse employment action

---

[5] Herring-Myers testified at her deposition that it was possible that rumors and gossip generated in the wake of Hennessey's display of the monkey may have affected her recollection and/or the perception of the person charged with handling the unemployment claim for Dollar Bank.

because his conduct would have been considered "per se" benign. Hennessey misses the mark for at least three reasons.

First, his hypothetical—that he would not have been subject to discipline had he been black—is entirely speculative and unsupported by any evidence in the record. In reality, at least two coworkers were offended by his display of the monkey, and both were offended before learning that it was Hennessey, a white man, who put it up.

Second, Hennessey can point to no evidence to suggest that Dollar Bank considered his conduct "per se" offensive, rather than, as the undisputed record reflects, offensive as defined by company policy.[6] His conduct brought one coworker to tears and caused another to file a complaint with HR.

Third, even if Dollar Bank could have, or should have, provided Hennessey with some form of due process before terminating him, and even if Dollar Bank could have, or should have, issued an anti-harassment policy that encouraged HR to consider an alleged harasser's subjective intent before reprimanding him, it is not for this Court or any court to prescribe such measures or regulate Dollar Bank's human resources operations. See Brewer, 72 F.3d at 332 (admonishing courts not to wade into a business's operations).

Last, while Hennessey relies on Dollar Bank's shifting position in this litigation about whether his job was eliminated or filled by Jerome Gibson, a black man, any inconsistency on this fact, again, has no bearing on the core facts of Hennessey's

---

[6] Again, the Employee Guide defines harassment not from the subjective perspective of an alleged harasser, but instead instructs employees to consider their behavior from the "perspective of anyone who might be offended . . . ." App. 120.

termination. Whether Gibson replaced Hennessey or not, even considering the totality of this record, fails to assist Hennessey, as a matter of logic and law, in demonstrating that Dollar Bank's reason for terminating him was pretextual.

IV.

For these reasons, we will affirm the District Court's order.